UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**JOSE AND LINDA LARTIGUE,**
as parents and next friends of K.L.,

    *Plaintiffs*,

v.                                                                    Case No. SA-19-CV-0393-JKP

**NORTHSIDE INDEPENDENT
SCHOOL DISTRICT,**

    *Defendant*.

## **MEMORANDUM OPINION AND ORDER**

Before the Court is a Motion to Dismiss (ECF No. 47) filed by Defendant Northside Independent School District ("N.I.S.D." or "the District"). The motion is ripe for ruling. After due consideration of the motion, briefing, and applicable law, the Court grants in part and denies in part the motion.

## **I. PROCEDURAL HISTORY**

This action was initiated as a putative class action brought by parents of students with "a hearing impairment disability" who attended school in the District. Plaintiffs alleged N.I.S.D. violated the Individuals with Disabilities Education Act ("IDEA"), Title II of the Americans with Disabilities Act ("ADA"), the Rehabilitation Act of 1973, Title VI of the Civil Rights Act of 1964, the United States and Texas Constitutions, and Chapter 121 of the Texas Human Resources Code. They claimed the District failed to provide "deaf and hearing services" to Plaintiffs and students who may be members of their proposed class. *ECF No. 1*.

Plaintiffs Jose and Linda Lartigue moved to sever their case and opt-out of the class action because K.L. no longer attended school in the District. However, after all other plaintiffs reached a settlement with N.I.S.D. and dismissed their cases, the Court permitted Jose and Linda Lartigue ("Plaintiffs") to file an amended complaint on behalf of their child. *Cf. ECF Nos. 1; 35*. In their second amended complaint, *ECF No. 46*, the operative pleading herein, Plaintiffs bring claims under Title II of the ADA; Section 504 of the Rehabilitation Act ("§ 504"); and 42 U.S.C. § 1983 ("§ 1983"). *Id. at 12-15*.

## II. ALLEGATIONS IN THE SECOND AMENDED COMPLAINT

According to Plaintiffs' second amended complaint, K.L., who is deaf and hearing impaired,[1] received special education services while attending the Science & Engineering Academy (the "Academy") in the N.I.S.D. *ECF No. 46, pars. 1-3*. Persons who are deaf and hearing impaired must actively work to both receive and send communications *Id., par. 2*. Consequently, cognitive fatigue is common in deaf and hearing impaired students. *Id.* Because K.L. can hear with the assistance of a hearing aid, she must work "that much harder" to concentrate and her cognitive fatigue eventually impacted her educationally, socially, physically, and emotionally. *Id., par. 4*. A dedicated quiet space to study at school (as opposed to spaces—like the cafeteria—with sounds and stimuli) would have helped, but N.I.S.D. refused to provide such a space. *Id., par. 27*.

K.L.'s Individualized Educational Plan ("IEP")[2] included sign-language interpreting services; auditory impaired ("AI") counseling services for forty-five minutes a month to address

---

[1] Terminology from Plaintiffs' second amended complaint.

[2] The IDEA provides federal funding to state and local school systems to assist in educating children with disabilities and conditions the granting of funds on compliance with federal standards. *Endrew F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 993-94 (2017) (citing 20 U.S.C. § 1400 *et seq*.). "Among them, the State must provide a free appropriate public education—a FAPE, for short—to all eligible children." *Id.* (citing § 1412(a)(1)).

self-advocacy and coping abilities; specialized transportation services; a transition plan to set specific post-high school goals; and consultative itinerant support from an AI certified teacher to help coordinate all the above. *Id., pars. 5-9*. K.L. never received such services. *Id., par. 9*.

Forty-five minutes of counseling was insufficient given her peers could meet with a counselor whenever they wanted. And K.L.'s peers met with their counselors privately, while K.L.'s counselor met with her in the hall. *Id., par. 24*. K.L.'s peers attending the Regional School for the Deaf participated in group counseling. As the only AI student at the Academy, K.L. did not have the same opportunity. *Id., par. 25*. K.L. experienced loneliness and social isolation at the Academy because none of her classmates or teachers could communicate with her in sign language. *Id., par. 26*. With no interpreter on the bus, K.L. panicked during an emergency. *Id., par. 29*. And with no flashing lights, she did not know when an emergency had been called at school. *Id., par. 29*.

Additionally, N.I.S.D. failed to provide K.L. equal access to academic and non-academic services at the Academy by refusing to provide Communication Access Realtime Translation Services ("CARTS") so K.L. could participate in a University Interscholastic League ("UIL") competition called Congress. *Id., pars. 9-11, 19*. K.L. was not given a copy of class notes before each class, even though N.I.S.D. acknowledged these were necessary both to K.L.'s IEP goals and her receiving a free and appropriate public education ("FAPE"). *Id., pars. 11-12, 20*. Further, the failure to provide closed-captioning for all films and videos shown in class and two sign-language interpreters at all times negatively impacted K.L.'s educational, physical, and neurological needs. *Id., pars. 13-14, 21, 23*.

K.L. attended School Board meetings on four separate occasions where she advocated for change. Specifically, K.L. requested that N.I.S.D. highlight successful deaf or hard of hearing

students in the same way they highlighted successful hearing students; that N.I.S.D. encourage a mentoring program for deaf students, help support the younger generation of deaf students, and offer American Sign Language ("ASL") as a foreign language; and that N.I.S.D. ensure closed captioning was included in all N.I.S.D. videos whether presented in school or at N.I.S.D.-sponsored public events. The Special Education Director promised a mentoring program that was never realized and the Board neither provided any feedback to K.L. nor did they grant her other requests. *Id., pars. 15-18.*

In summary, N.I.S.D. failed to provide the following to K.L.: (1) two interpreters at all times; (2) closed captioning for films and educational materials in class; (3) specialized consultative itinerant services to coordinate academic and non-academic needs; (4) private counseling; and (5) CART services. And N.I.S.D. failed to respond to K.L.'s cognitive fatigue, her feelings of isolation, and her inability to communicate with her peers. As a result of N.I.S.D.'s indifference to her needs; her cognitive fatigue, loneliness, and social isolation; and the academic rigors of the Academy, K.L. began having panic attacks and ultimately left school. *Id., pars. 30-36.*

### III. LEGAL STANDARD

To provide opposing parties fair notice of what the asserted claim is and the grounds upon which it rests, every pleading must contain a short and plain statement of the claim showing the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Conley v. Gibson*, 355 U.S. 41, 47 (1957). To survive a Rule 12(b)(6) motion to dismiss, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The focus is not on whether the plaintiff will ultimately prevail, but whether that party should be permitted to present evidence to support adequately asserted claims. *Id.*; *Twombly*, 550 U.S. at 563 n.8.

In assessing a motion to dismiss under Rule 12(b)(6), the Court's review is limited to the complaint and any documents attached to the motion to dismiss referred to in the complaint and central to the plaintiff's claims. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). When reviewing the complaint, the "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).

## IV. DISCUSSION

As an initial matter, the Court notes it is not "bound to accept as true a legal conclusion couched as a factual allegation." *Wood v. Moss*, 134 S. Ct. 2056, 2065 n.5 (2014) (citing *Iqbal*, 556 U.S. at 678). The "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Accordingly, in conducting its analysis, this Court looks to the well-pled facts alleged in Plaintiffs' pleading.

The Court also notes that the following are undisputed: (1) K.L. is an individual with a disability as contemplated within the meaning of the Title II of the ADA, and an otherwise qualified individual with a disability within the meaning of § 504; (2) N.I.S.D. is an agency of the State of Texas that conducts programs or activities receiving federal financial assistance as defined by § 504, and is a public entity as defined by Title II of the ADA; (3) K.L. received

5

special education services as contemplated by the IDEA and she satisfied the administrative exhaustion requirements before filing this action.

## A. Constitutional and *Monell* Claims

"Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) (citation and internal quotation marks omitted). "[T]here can be no § 1983 liability unless the plaintiff has "suffered a constitutional violation . . . at the hands of . . . a state actor." *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 867 (5th Cir. 2012) (en banc). Accordingly, for a § 1983 claim to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Id.*, 675 F.3d at 854.

### 1. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment mandates that persons similarly situated be treated the same under the law. *Plyler v. Doe*, 457 U.S. 202, 216 (1982). An equal protection claim may be brought by a member of a protected class or by a "class of one." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). A "class of one" claim must allege that the plaintiff has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.*; *accord Lindquist v. City of Pasadena Tex.*, 669 F.3d 225, 233 (5th Cir. 2012); *Wilson v. Birnberg*, 667 F.3d 591, 599 (5th Cir. 2012).

In their second amended complaint, Plaintiffs' allege that K.L. "was not provided equal treatment to her non-disabled peers because of her disabilities." *ECF No. 46, par 47*. Plaintiffs'

response clarifies that K.L. "was denied access to public educational services provided her non-hearing impaired peers," including access to UIL competitions and audio-visual materials. *ECF No. 48, pars. 45-46*. She alleges she was denied access to competitions because N.I.S.D. did not provide CARTS; she was denied access to audio-visual materials because N.I.S.D. did not provide closed captioning; and she was denied "many other things." *Id., par. 46*. Plaintiffs do not allege that students who watch in-class audio-visual materials or compete in debate competitions are similarly situated to K.L. and have not alleged sufficient facts for the Court to conclude that the hearing students are appropriate comparators. Further, Plaintiffs do not allege facts that show there was no rational basis for the difference in treatment between K.L. and the hearing students.

**2. Due Process**

Plaintiffs' second amended complaint shows that K.L. made four presentations to the School Board requesting closed-captioning of audio-visual materials. *ECF No. 46, pars. 15-18*. Plaintiffs only allege that K.L. did not receive the response she desired. The pleading makes clear the Board did not deny her request to be heard. And there are no allegations from which the Court could infer that the Board did not exercise independent judgment or that it engaged in other conduct that impinged K.L.'s due process rights.

Plaintiffs also allege K.L. was denied her property right in a FAPE secured by the IDEA. *Id., par. 48*. The IDEA provides procedural safeguards that allow the parents an opportunity to challenge the establishment or implementation of an IEP in an "impartial due process hearing which shall be conducted by the State educational agency . . . as determined by State law." 20 U.S.C. § 1415(b)(2). In Texas, the hearing is conducted before the Texas Education Agency ("TEA"). Plaintiffs' pleading shows that K.L. requested a special education due process hearing with the TEA, a hearing was convened, and K.L. was represented by counsel. *Id. pars. 8-9*.

7

Additionally, Plaintiffs' second amended complaint does not challenge the decision of the hearing officer. Thus, review of the hearing officer's decision is not before this Court.

### 3. *Monell*

Municipalities and local governmental entities qualify as persons liable to suit under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). To state a claim for municipal liability under § 1983, a plaintiff must plausibly allege: (1) an official policy or custom; (2) a policymaker who can be charged with actual or constructive knowledge of the policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015) (quoting *Monell*, 436 U.S. at 694). An "official policy or custom" of a school district is: (1) "a policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the district, or by an official to whom the district has delegated policy-making authority;" or (2) "a persistent, widespread practice of district officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents district policy." *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1304 (5th Cir. 1995) (internal quotations and citations omitted).

With respect to their *Monell* claims, Plaintiffs have not shown that any alleged injury occurred as a result of an unconstitutional policy or custom of N.I.S.D. Plaintiffs allege:

> the Northside ISD School Board had an actual practice and custom of conscious and deliberate indifference to the federal and state constitutions, federal law, federal rules, directives from federal executive agencies, and their own School Board policies and procedures in regard to the treatment of K.L. due to her status as a deaf and hearing impaired person, and such failures were a moving force in the injuries to K.L. for which she seeks recovery pursuant to 42 U.S.C. §1983.

*ECF No. 46, par. 46*. But Plaintiffs' do not point to a specific policy nor do her allegations contain facts that demonstrate any persistent, widespread practices or a pattern of constitutional violations by the School Board or the Academy.

School districts can be liable for the deliberate indifference of their subordinates to a student's constitutional rights, where there is (1) a failure to supervise or train; (2) a causal connection between the failure to supervise or train and the violation of the plaintiff's rights; and (3) where the failure to supervise or train itself amounted to deliberate indifference. *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 452–54 (5th Cir. 1994). "Mere negligence or even gross negligence is not enough; 'a plaintiff usually must demonstrate a pattern of [constitutional] violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation.'" *Yara v. Perryton Indep. Sch. Dist.*, 560 Fed. App'x 356, 360 (5th Cir. 2014) (per curiam) (quoting *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005)).

Plaintiffs' second amended complaint alleges: (1) the District failed to supervise its staff "as to the law" and "their duties and responsibilities thereunder"; (2) "obviously failed to correctly train staff in regard to the laws, regulations, directives and the School Board's own Policies & Procedures promulgated thereunder"; and (3) "[i]n regard to all the acts, omissions and deliberate indifference of the Defendant K.L. has been injured thereby." *ECF No. 46, pars. 49-51*. But Plaintiffs do not point to facts that support these allegations. Plaintiffs' response highlights that K.L. was not provided with two ASL interpreters at all times, including on the bus or during a school emergency, and the District's "refusals and denials" to K.L. and her mother's complaints. *ECF No. 48, pars. 37-40*. Plaintiffs' contend that these facts support a finding of a deliberate indifference.

To demonstrate deliberate indifference, a plaintiff must show a specific state actor knew a "substantial risk of serious harm" existed and "disregarded the risk." *Cleveland v. Bell*, 938 F.3d 672, 676 (5th Cir. 2019); *see also Leffall v. Dall. Indep. Sch. Dist.*, 28 F.3d 521, 531 (5th Cir. 1994) (reciting the elements as: "(1) an unusually serious risk of harm existed, (2) the defendant had actual knowledge, or was willfully blind to, the elevated risk, and (3) the defendant failed to take obvious steps to address the risk"). Neither Plaintiffs' second amended complaint nor their response includes factual content that demonstrates or allows the Court to draw the reasonable inference that an "unusually serious risk of harm existed." *Leffall*, 28 F.3d 531. For example, the reference to a school emergency is presented in the abstract. The allegation that "on one occasion" K.L. "panicked due to an emergency" on the bus is too benign to conclude that there was a risk of serious harm during that incident. Nor do Plaintiffs allege that a state actor disregarded any risk posed by the school bus emergency. *ECF No. 46, par. 28*. And Plaintiffs' facts do not demonstrate how the absence of two interpreters at all times or a lack of closed captioning on audio-visual materials created a serious risk of harm.

Plaintiffs appear to allege that the confluence of all the events alleged in their complaint led to K.L.'s mental health issues. *Id., pars. 32-36*. They then contend the Academy was deliberately indifferent to K.L. as her physical and emotional state "deteriorated." *Id.* Plaintiffs allege that K.L. "suffered alone" because she had no one to talk to but they also allege she had an AI certified counselor with whom she met regularly. *Id., pars. 24, 32*. Additionally, the Academy met with K.L. and her parents to discuss K.L.'s health concerns and the Academy summoned emergency services when K.L. passed-out at school. *Id., pars. 33-34*.

Even assuming Plaintiffs could bring a claim against the District for deliberate indifference to a serious medical need, Plaintiffs' second amended complaint alleges no facts to

support this claim. To state such claim, a plaintiff must plausibly allege that a specific defendant was deliberately indifferent to her serious medical need. *See Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Twombly*, 550 U.S. at 556; *Iqbal*, 556 U.S. at 678. A serious medical need is "one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006). An allegation of deliberate indifference must show the plaintiff's "exposure to a substantial risk of serious harm" and the official's "deliberate indifference to that risk," such as the intentional denial, delay, or interference with a plaintiff's medical care, or conduct that evinces a wanton disregard. *Gobert*, 463 F.3d at 345-46; *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *see also Estelle*, 429 U.S. at 104-05.

"A failure to act 'unaccompanied by knowledge of a significant risk of harm' is insufficient to establish a constitutional violation." *Bell*, 938 F.3d at 676 (quoting *Farmer*, 511 U.S. at 837-38). Thus, an inadvertent failure to provide adequate medical care, negligence, a mere delay in medical care (without more), or a difference of opinion over proper medical treatment, are all insufficient to constitute deliberate indifference. *See Estelle*, 429 U.S. at 105-07. A plaintiff must show the official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Nothing in Plaintiffs' second amended complaint evinces a failure to act or wanton disregard by the Academy or the District to K.L.'s panic attacks. Thus, their pleading alleges no plausible entitlement to relief.

As explained above, Plaintiffs have not alleged facts to support each of the elements required to state a constitutional or *Monell* claim brought under § 1983. Accordingly, the Court dismisses these claims.

**B. Title II of the ADA and § 504 of the Rehabilitation Act**

Title II of the ADA provides "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 prohibits discrimination by recipients of federal funding against persons with disabilities. 29 U.S.C. § 794. Besides the federal funding prerequisite for the Rehabilitation Act, the ADA and Rehabilitation Act "are judged under the same legal standards, and the same remedies are available under both Acts." *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010) (per curiam).

Plaintiffs bring their ADA claim as a failure to accommodate claim and their § 504 claim as a hostile educational environment claim. *ECF No. 48 at 32*. "A claim for failure to accommodate under the ADA has the following elements: (1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered institution; and (3) the covered institution failed to make reasonable accommodations for such known limitations." *Choi v. University of Tex. Health Sci. Ctr. at San Antonio*, 633 F. App'x 214, 215 (5th Cir. 2015) (per curiam) (citing *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 164 (5th Cir. 1996)); *accord Cadena v. El Paso Cty.*, 946 F.3d 717, 724 (5th Cir. 2020). "These elements also apply to Rehabilitation Act claims." *Id.* (citing *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005)).

It is undisputed that K.L. is an individual with a qualifying disability and that her disability and its consequential limitations were known by N.I.S.D. Plaintiffs aver that K.L. required audio-video content to be captioned in order to meaningfully access it; K.L. needed CARTS in order to participate in UIL competitions; and that the District refused to provide these accommodations. These allegations are sufficient to establish a failure to accommodate claim.

Plaintiffs further allege K.L. was a victim of a hostile educational environment. *ECF No. 46, par. 45*. The facts alleged in support of this claim are that K.L. did not have closed-captioning on in-class audio-video or consistent sign-language support and was unable to participate in debate class, the debate team, and UIL competitions. *ECF No. 48, par. 44*. Plaintiffs do not cite a Fifth Circuit case that recognizes a cause of action for a generally hostile environment caused by failures to accommodate a disability. Applying the principles expressed in employer-employee and student-student claims,[3] this Court cannot conclude that the facts alleged in Plaintiffs' second amended complaint show conduct that was so pervasive as to interfere with K.L.'s academic performance. While Plaintiffs allege facts that demonstrate physical and emotional responses to stress, they do not connect K.L.'s panic attacks to factual allegations that demonstrate a hostile educational environment. Accordingly, the Court dismisses Plaintiffs' hostile educational environment claim.

---

[3] *See, e.g., Carmichael v. Galbraith*, 574 F. App'x 286, 289 (5th Cir. 2014) (per curiam) (requiring evidence of "pervasive harassment" in student-student sexual harassment claim); *Estate of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, 996 (5th Cir. 2014) (holding that the elements required to establish student-student harassment include showing that "the harassment was sufficiently severe or pervasive that it altered the condition of his education and created an abusive educational environment"); *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (in determining whether a hostile work environment based on race discrimination existed, courts must consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance").

**C. Leave to Amend**

Plaintiffs' response to the motion to dismiss requests leave to amend. Generally, courts should give a plaintiff at least one opportunity to cure any pleading deficiencies before dismissing a case under Rule 12(b)(6). *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). However, it is not an abuse of discretion to grant a motion to dismiss without ordering further pleading where the plaintiff has had several opportunities to replead. *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999); *accord Fregia v. Bright*, 750 F. App'x 296, 301 (5th Cir. 2018) (per curiam) (citing *United States ex rel. Willard v. Humana Health Plan of Texas, Inc.*, 336 F.3d 375, 387 (5th Cir. 2003)). Plaintiffs have had two previous opportunities to cure the pleading deficiencies identified by N.I.S.D., which included challenges to the sufficiency their claims. *See ECF Nos. 4; 39*. Therefore, the Court denies Plaintiffs' request for leave to amend.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART and DENIES IN PART** the Motion to Dismiss. *ECF No. 47*. Plaintiffs' failure to accommodate claim shall proceed. All other claims are dismissed with prejudice.

This case is set for status conference via Zoom at **11:30 AM on April 27, 2021**. Counsel who have not received the Zoom link within 48 hours of the scheduled conference should contact Magda Muzza, the Courtroom Deputy. Ms. Muzza can be reached at (210) 244-5021 or Magda_Muzza@txwd.uscourts.gov.

**It is so ORDERED this 23rd day of March 2021.**

_____
JASON PULLIAM
UNITED STATES DISTRICT JUDGE