**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

**KAYLEE LARTIGUE,**

   *Plaintiffs*,

**v.**                                                            **Case No.  SA-19-CV-00393-JKP**

**NORTHSIDE INDEPENDENT**
**SCHOOL DISTRICT,**

   *Defendant*.

**MEMORANDUM OPINION AND ORDER**

      Before the Court is a Motion for Summary Judgment filed by Defendant Northside Independent School District (NISD). *ECF No. 70*. The Court held this Motion in abeyance pending mediation with Magistrate Judge Henry J. Bemporad. On June 22, 2022, Judge Bemporad advised the Court the parties failed to settle. *ECF No. 79*. This Motion is now ripe for ruling. After due consideration of the Motion, briefing, record, and applicable law, the Court **DENIES** the Motion.

      This case is ready to be set for trial. On or before **July 15, 2022**, the parties shall confer and advise the Court of three potential trial dates on or before **December 31, 2022**. The advisory shall include the estimated number of days needed for trial. The Court will provide the parties the potential dates if available. If the parties do not file an advisory, or the provided dates are not available on the Court's trial schedule, the Court will assign a trial date, at which time the Court will enter a trial scheduling order. If the parties wish, they may call the Court's Courtroom Deputy, Magda Muzza, for information regarding open trial dates. Ms. Muzza may be reached at

210-244-5021. The parties may engage in private settlement negotiations, including mediation with a private mediator any time prior to trial. If the parties elect to request mediation before a Magistrate Judge, their joint request for referral to a Magistrate Judge for mediation must be filed no later than forty-five days before trial.

**Procedural and Factual Background**

This action was initiated as a putative class action brought by parents of students with hearing impairments who attended NISD schools. *ECF No. 1*. Jose and Linda Lartigue moved to sever their case and opt-out of the class action on behalf of their daughter, Kaylee Lartigue, because she no longer attended an NISD school. All other plaintiffs settled with NISD and dismissed their cases, and Lartigue is the sole remaining Plaintiff. The Court issued a Memorandum Opinion and Order on March 23, 2021, granting in part and denying in part NISD's Motion to Dismiss. *ECF No. 52*. Pursuant to that Order, only Lartigue's claim under Title II of the Americans with Disabilities Act (ADA) remains. In her Third Amended Complaint, which is the live pleading, Lartigue updated the caption to reflect her new status as an adult and amended her requested remedies. *ECF No. 58*.

According to her complaint, Lartigue, who is deaf and hearing impaired, received special education services while attending NISD's Science & Engineering Academy (the Academy). Persons who are deaf and hearing impaired must actively work to both receive and send communications. Consequently, cognitive fatigue is common in students with hearing impairments. Because Lartigue can hear with the assistance of a hearing aid, she alleges she must work "that much harder" to concentrate and her cognitive fatigue eventually impacted her educationally, socially, physically, and emotionally. A dedicated quiet space to study at school

(as opposed to spaces—like the cafeteria—with sounds and stimuli) would have helped, but Lartigue alleges NISD refused to provide such a space.

Lartigue's Individualized Educational Plan (IEP) included sign-language interpreting services; auditory impaired (AI) counseling services for forty-five minutes a month to address self-advocacy and coping abilities; specialized transportation services; a transition plan to set specific post-high school goals; and consultative itinerant support from an AI certified teacher to help coordinate all the above. Lartigue alleges she never received such services.

Further, Lartigue alleges her peers met with their counselors privately, while her counselor met with her in the hall and for a limited amount of time. Lartigue's peers attending the Regional School for the Deaf participated in group counseling. As the only AI student at the Academy, Lartigue did not have the same opportunity. Lartigue alleges she experienced loneliness and social isolation at the Academy because none of her classmates or teachers could communicate with her in sign language. With no interpreter on the bus, Lartigue alleges she panicked during an emergency. With no flashing lights at school, she alleges she did not know when an emergency had been called.

Additionally, Lartigue alleges NISD failed to provide equal access to academic and non-academic services by refusing to provide Communication Access Realtime Translation Services (CARTS) so she could participate in a University Interscholastic League (UIL) competition called Congress. Lartigue alleges she was not given a copy of class notes before each class, even though NISD acknowledged these were necessary both to Lartigue's IEP goals and her receiving a free and appropriate public education (FAPE). Further, Lartigue alleges failure to provide closed-captioning for all films and videos shown in class and two sign-language interpreters at all times negatively impacted her educational, physical, and neurological needs.

Lartigue alleges she attended School Board meetings on four separate occasions where she advocated for change. Specifically, Lartigue alleges she requested NISD highlight successful deaf or hard of hearing students in the same way they highlighted successful hearing students; NISD encourage a mentoring program for deaf students, help support the younger generation of deaf students, and offer American Sign Language (ASL) as a foreign language; and NISD ensure closed captioning was included in all NISD videos whether presented in school or at NISD-sponsored public events. Lartigue alleges the Special Education Director promised a mentoring program that was never realized and the Board did not respond to her other requests.

In summary, Lartigue alleges NISD failed to provide the following: (1) two interpreters at all times; (2) closed captioning for films and educational materials in class; (3) specialized consultative itinerant services to coordinate academic and non-academic needs; (4) private counseling; and (5) CART services. She further alleges NISD failed to respond to her cognitive fatigue, her feelings of isolation, and her inability to communicate with her peers. Lartigue alleges as a result of NISD's indifference to her needs; her cognitive fatigue, loneliness, and social isolation; and the academic rigors of the Academy, she began having panic attacks and ultimately left school.

**Legal Standard**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Rodriguez v. Pacificare, Inc.*, 980 F.2d 1014, 1019 (5th Cir. 1993).[1] A dispute is "genuine"

---

[1] Although 2010 amendments replaced "issue" with "dispute," the summary judgment standard "remains unchanged." Fed. R. Civ. P. 56 advisory committee notes (2010 amend.).

where there is sufficient evidence such that a reasonable jury could return a verdict for the nonmoving party. *Id*. There is no genuine dispute for trial when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). While all evidence and reasonable inferences are viewed in the light most favorable to the nonmovant, and all disputed facts are resolved in favor of the nonmovant, the judge's function "is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson*, 477 U.S. at 249); *see also Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 234 (5th Cir. 2016).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp.*, 477 U.S. at 323. The moving party has the burden to "demonstrate the absence of a genuine issue of material fact and the appropriateness of judgment as a matter of law" to prevail on its motion. *Union Planters Nat'l Leasing v. Woods*, 687 F.2d 117, 121 (5th Cir. 1982). To do so, the moving party must identify the portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits that demonstrate the absence of a triable dispute of material fact. *Celotex Corp.*, 477 U.S. at 323; *Union Planters Nat'l Leasing*, 687 F.2d at 121. To meet its initial burden, the moving party must either: (1) present evidence that negates the existence of some material element of the nonmoving party's claim; or (2) point out the nonmoving party lacks sufficient evidence to prove an essential element of its claim. *Celotex Corp.*, 477 U.S. at 331; *McKee v. CBF Corp.*, 299 F. App'x 426, 428 (5th Cir. 2008).

"When a party moves for summary judgment on claims on which the opposing parties will bear the burden of proof at trial, the moving party can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support the nonmovants' claims." *Armas v. St. Augustine Old Roman Catholic Church*, No. 3:17-CV-2383-D, 2019 WL 2929616, at *2 (N.D. Tex. July 8, 2019) (citing *Celotex Corp.*, 477 U.S. at 325); *see also Austin v. Kroger Texas, L.P.*, 864 F. 3d 326, 335 (5th Cir. 2017)). The movant is not required to negate the elements of the nonmovant's case but may satisfy its summary judgment burden by alleging the absence of facts supporting specific elements of the nonmovant's cause(s) of action. *Little v. Liquid Air Corp.*, 37 F. 3d 1069, 1075, 1076 n. 16 (5th Cir. 1994).

If the movant carries that initial burden, the burden shifts to the nonmovant to identify specific facts or present competent summary judgment evidence showing the existence of a genuine fact dispute. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586–87; *see also* Fed. R. Civ. P. 56(c). Upon the shifting burden "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Heinsohn*, 832 F.3d at 234 (citation omitted). Furthermore, the courts have "no duty to search the record for material fact issues." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010); *see also Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012).

### Discussion

NISD moves for summary judgment on the basis of three theories: administrative exhaustion, collateral estoppel, and insufficient evidence of NISD's refusal to provide services. The Court considers each of these arguments below.

## I.     Administrative Exhaustion

NISD argues Latrigue's ADA claim is improper because a plaintiff who sues a school district seeking relief that is also available under the Individuals with Disabilities Act (IDEA) must first meet IDEA's administrative exhaustion requirements, and Latrigue has failed to do so. Latrigue avers she has met IDEA's administrative exhaustion requirements.

IDEA offers federal funds to States in exchange for a commitment to furnish a "free appropriate public education" (FAPE) to children with certain disabilities, and establishes formal administrative procedures for resolving disputes between parents and schools concerning the provision of a FAPE. Title II of the ADA, which is the statue under which Latrigue brings this lawsuit, also protects the interests of children with disabilities. Under subsection 1415(l) of the IDEA, a plaintiff bringing suit under the ADA "seeking relief that is also available under [the IDEA]" must first exhaust certain IDEA administrative procedures. Specifically, the plaintiff must pursue (1) an impartial due process hearing before a state or local educational agency; and (2) appeal of a final decision made by a state or local educational agency to the state educational agency. *See* 20 U.S.C. § 1412(f), (g).

The parties do not dispute that Latrigue pursued a due process hearing on her IDEA claim before a Special Education Hearing Officer for the State of Texas, which was held on August 21-22, 2019. The question is whether she had to appeal the Hearing Officer's decision to meet IDEA's exhaustion requirement. In Texas, a hearing officer's decision is final and appealable in state or federal court. *See* Tex. Admin. Code § 89.1185. In other words, Texas does not provide an aggrieved party the opportunity to appeal a hearing officer's decision to the Texas Education Agency; the decision is directly appealable by civil action in state or federal court. NISD contends that Latrigue was required to appeal the Hearing Officer's decision in state or federal

court to meet IDEA's administrative exhaustion requirement. This contention, however, is inconsistent with IDEA's statutory language. Subsection 1415(l) says a plaintiff must exhaust IDEA's administrative procedures established under subsections (f) and (g) before seeking relief under the ADA. Subsection (f) relates to a due process hearing by a state or local agency and subsection (g) relates to appeal before a state agency. Nothing in subsection 1415(l) requires appeal to state or federal court as a prerequisite to administrative exhaustion.

The fact that Texas does not provide an opportunity to appeal a hearing officer's decision to the state education agency does not impose an additional burden on Latrigue to appeal in state or federal court. To the contrary, it simply means that she has exhausted her administrative remedies by pursuing the one opportunity for relief that the state provides, a due process hearing. For this reason, NISD is not entitled to summary judgment on administrative exhaustion grounds.

## II.    Collateral Estoppel

NISD alleges Latrigue's "collateral attack" on the findings of the due process hearing officer are barred by the collateral estoppel doctrine. Latrigue asserts the collateral estoppel doctrine does not apply because the issues in this case are fundamentally different from those considered in the due process hearing.

Issue preclusion, or collateral estoppel, "precludes a party from litigating an issue already raised in an earlier action between the same parties if: (1) the issue at stake is identical to the one involved in the earlier action; (2) the issue was actually litigated in the prior action; and (3) the determination of the issue in the prior action was a necessary part of the judgment in that action." *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 397 (5th Cir. 2004). The doctrine "does not preclude litigation of an issue unless both the facts and the legal standard used to assess them are

the same in both proceedings." *Copeland v. Merrill Lynch & Co., Inc.*, 47 F.3d 1415, 1422 (5th Cir. 1995). To determine whether collateral estoppel applies, the Court compares Latrigue's due process hearing to this case, to determine whether the facts and legal standards are the same.

The hearing officer who conducted Latrigue's due process hearing assessed whether she received a FAPE under the IDEA applying the following legal standard: "In order for a student to receive a FAPE, a school district must provide the student an educational program reasonably calculated to enable the student to make progress appropriate in light of the student's circumstances." *See ECF No. 70-3, p. 14* (citing *Endrew F. v. Douglas Cty. Sch. Dist.*, 137 S.Ct. 988, 999 (2017)). The hearing officer further applied a four-factor test established by the Fifth Circuit to determine whether a school district's program meets IDEA requirements. The factors include: "Whether the program is individualized on the basis of the student's assessments and performance; whether the program is administered in the least restrictive environment; whether the services are provided in a coordinated manner by the 'key' stakeholders; and whether positive academic and non-academic benefits are demonstrated." *Id.* (citing *Cypress-Fairbanks Ind. Sch. Dist. V. Michael F.*, 118 F.3d 245, 253 (5th Cir. 1997)).

In contrast, Title II of the ADA, which is the basis for Latrigue's remaining claim in this case, provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A claim for failure to accommodate under the ADA contains the following elements: (1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered institution; and (3) the covered institution failed to make reasonable

accommodations for such known limitations. *Neely v. PSEG Tex., Ltd. P'ship,* 735 F.3d 242, 247 (5th Cir. 2013).

The legal standards applied by the hearing officer in Latrigue's due process hearing and the Court in this case are significantly different. The purpose of the due process hearing was to determine whether NISD provided an educational program reasonably calculated to enable Latrigue's progress. Latrigue's ADA claim turns on whether NISD discriminated against her on account of her disability. That issue was not considered in the due process hearing. Therefore, the Court finds Latrigue's ADA claim is not precluded by the due process hearing and is not barred by the collateral estoppel doctrine.

## III.     Evidence of NISD's Refusal to Provide Services

NISD argues Latrigue failed to provide sufficient evidence to show NISD refused to provide her reasonable accommodations, as required under the ADA. To support this contention, NISD notes the school district agreed to provide closed captioning and translation services for debate. Latrigue acknowledges NISD agreed to provide these accomodations, but argues NISD either failed to follow through on its commitment or did so too late to be of use. The question of whether the accommodations NISD provided were adequate under the ADA is a question of fact best resolved by the jury. Furthermore, although the Court identified closed captioning and translation services as factual allegations sufficient to deny NISD's Motion to Dismiss, the Court has not restricted Latrigue's claim to those facts. *ECF No. 52, p. 13*. Therefore, NISD is not entitled to summary judgment for lack of evidence of its refusal to provide services.

## Conclusion

For the reasons stated, NISD has failed to demonstrate the absence of a genuine dispute of material fact and the appropriateness of judgment as a matter of law. Therefore, NISD's

Motion for Summary Judgment is **DENIED**. This case is ready to be set for trial. On or before

**July 15, 2022**, the parties shall confer and advise the Court of three potential trial dates on or

before **December 31, 2022**.

    It is so ORDERED.
    SIGNED this 1st day of July, 2022.

JASON  PULLIAM
UNITED STATES DISTRICT JUDGE